STEVEN C. SMITH (SBN. 116246)
SMITH LC
3161 Michelson Dr., Suite 925
Irvine, California 92612
Telephone:    949.416.5000
Facsimile:    949.416.5555
Email: ssmith@smith-lc.com

STEPHEN C. BIGGS (*Pro Hac Vice*)
SMITH LC
4505 E. Chandler Blvd., Suite 290
Phoenix, Arizona 85048
Telephone:    480.361.8575
Facsimile:    480.350.7309
Email: sbiggs@smith-lc.com

*Attorneys for Creditor Mark Valentine*

UNITIED STATES BANKRUPTCY COURT
CENTRIAL DISTRICT OF CALIFORNIA
NORTHER DIVISION – SANTA BARBARA

In re

iCRco., Inc.

Debtor.

Bankruptcy No. 9:16-bk-11742-PC

Chapter 11

**DECLARATION OF HENRY J. KAHRS IN SUPPORT OF CREDITOR MARK VALENTINE'S OBJECTION TO CONFIRMATION OF DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN**

Date:    May 10, 2017
Time:    10:00 a.m.
Location:    1415 State Street, Ctrm 201
    Santa Barbara, CA 93101

I, Henry J. Kahrs, CPA/CFF/ABV, CMA, CFE declare as follows:

1.    I am the Managing Partner of the Los Angeles and Orange County offices of RGL Forensics, an international accounting and financial advisory firm. RGL Forensics is an International consulting firm specializing in forensic accounting, economic damage analysis and business valuation. My Practice involves all three of these arenas. I am a Certified Public

1

1  Accountant (CPA), Certified Management Accountant (CMA), Certified Fraud Examiner (CFE), Accredited in Financial Forensics (CFF) and Accredited in Business Valuation (ABV). I also received a Masters in Business Administration in Finance from California State University-Fullerton. I have been practicing for over 31 years and have been involved in numerous cases involving financial analysis and business valuation. My current Curriculum Vitae is attached as Exhibit No. 1. I was retained as the expert by Mark Valentine, who I understand is a creditor in this bankruptcy proceeding, in the state court case *Mark Valentine v. iCRco, Inc., et al*, Los Angeles Superior Court Case No. BC465193 (hereinafter "the State Court Case"), and valued iCRco, Inc. in that case.

2.  I submit this declaration in support of Creditor Mark Valentine's Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan (docket entry # 144) and in response and opposition to the Declaration of Gary Gray in Support of Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization (docket entry # 150).

3.  I reviewed the declaration of Mr. Gary Gray, CPA, and the report he attached to that declaration, and I find them incomplete, lacking in substance and Mr. Gray's conclusions are fundamentally incorrect. In his report, Mr. Gray provides no detail or support for his analysis, he merely takes the bottom line from the income statement and adds back interest, income tax and amortization. There is no back-up or other analysis. His basic conclusion is that iCRco, Inc. is worth next to nothing.

4.  Typically in performing a business valuation, a CPA would review the detail behind the financial statements and make adjustments and projections. The concept of a business valuation considers the future cash flows of the business. There are times where it may be appropriate to capitalize the earnings of a specific year, but other times in which it may not be.

5.  The concept of capitalizing earnings is based on the assumption that the business is stable and that earnings will be the same (other than inflationary growth) into perpetuity. There are many instances where this approach is improper, such as when a business is in a large growth mode, or decline mode, or possibly in bankruptcy due to a decline in sales or a change in cost structure.

2

6. In situations where cash flows are expected to vary the concept of discounted cash flows comes into play. This takes projections of future earnings and brings them to present value until earnings stabilize, at which point the stabilized earnings are capitalized.

7. Further, often businesses in bankruptcy have a cost structure that forces them into a short-term negative cash flow position. A detailed analysis of expenses is necessary to determine the actual and projected earnings and cash flows. Mr. Gray did no such analysis.

8. As a CPA, Mr. Gray is bound by the AICPA's Statement on Standards for Valuation Services. These standards apply anytime a conclusion of value is reached. Mr. Gray states in his report he has reached a conclusion of value. There are numerous standards which Mr. Gray did not follow. For example Paragraph 13c. of the SSVS states, "In understanding the nature and risks of the valuation services to be provided, and the expectations of the client, the valuation analyst should consider the matters in Paragraph 12, and in addition, at a minimum the following: The nature of the interest and ownership rights in the business, business interest, security, or intangible asset being valued including control characteristics and the degree of marketability of the interest." Since this is a 100% interest with sales exceeding $10 million annually, following the valuation standards, the market method would be required to reach a value conclusion.

9. Under Paragraph 27: "The valuation analyst should, as available and applicable to the valuation engagement, obtain sufficient nonfinancial information to enable him or her to understand the subject entity," including its:

- Nature, background & history
- Facilities
- Organizational structure
- Management team
- Classes of equity ownership
- Products, services or both
- Economic environment
- Geographical markets

3

- Industry markets
- Key customers and suppliers
- Competition
- Business risks
- Strategy & future plans
- Governmental or regulatory environment

10. In Paragraph 29 of the AICPA Statement on Valuation Standards it states: The financial analyst should obtain, where applicable and available, financial information from the entity such as:

- Historical financial information (including annual and interim financial statements and key financial ratios and statistics) for an appropriate number of years.
- Prospective financial information (for example budgets, forecasts and projections)
- Comparative summaries of financial statements or information covering a period of time
- Common size financial statements for the subject entity for an appropriate number of years
- Comparative common size industry information for a relevant period of time
- Income tax returns for an appropriate number of years
- Information on compensation of owners including benefits and personal expenses
- Information on key man or officers life insurance

11. This data is required to make the appropriate economic adjustments to financial statements. Mr. Gray made no such adjustments, nor did he consider any projections or budgets. Therefore, Mr. Gray's report falls below AICPA standards and his conclusion regarding the value of the reorganized iCRco, Inc. is unreliable.

12. To point out the obvious nature of the flaws in Mr. Gray's conclusion, one would only need to review the Historical & Projection income statement document filed by iCRco, Inc. in this bankruptcy action at page 29 of docket entry # 104. I have attached this as Exhibit No. 2 to this declaration. Mr. Gray concludes the future cash flows are negative, therefore, there is no goodwill. In reviewing the document presented to the bankruptcy court, for the first three quarters of 2016, ICRco made a profit of $237,662 and the projected profit for the year is $227,407. Adding back interest and depreciation results in an EBITDA of $359,332.

13. In the State Court Case, the expert for iCRco, Inc. testified that a multiplier of 8.3 times EBITDA would be appropriate. A copy of the page from Mr. Schulze's report is attached as Exhibit No. 3. Using this multiplier the value of iCRco, Inc. would be estimated at $2,982,456. Looking at the growth in income between 2015 and 2016, one could argue that even a higher valuation is appropriate. Please note we are not expressing a conclusion of value, as we have not reviewed the necessary data and documents. This is shown to illustrate the lack of validity of Mr. Gray's conclusion and his failure to adhere to AICPA SSVS Standards.

14. Further, while Mr. Gray points out that a "Going Concern Value results from factors such as having a trained work force, an operational plant and the necessary licenses, systems and procedures in place," he does not mention one of the more important intangible assets found in the market, a customer base. There are often times that competitors are looking to buy companies whose infrastructure is too large for the sales volume (such as this company where in 2015 costs exceed revenue) with the intention of buying the customer base and eliminating duplicative costs.

15. In this particular case, the revenue of iCRco, Inc. in 2015 was $15,437,000 and actual revenue for three quarters of 2016 plus one quarter projected was $12,957,081. Again referring to iCRco, Inc.'s own expert in the State Court Case, the market estimates the value at .9 times revenue (Please refer to Exhibit No. 3). Using this approach the company would be valued at $11,661,372. Please note we are not expressing a conclusion of value, as we have not reviewed the necessary data and documents. This is shown to illustrate the lack of validity of Mr. Gray's conclusion and his failure to adhere to AICPA SSVS Standards.

16. Because the Company is in bankruptcy it is reasonable to assume the Company may sell at below market, but the difference between $11 million and $50,000 – 100,000 is too great to not pursue a valuation that meets the peer reviewed standards in the industry without further due diligence. Further, without a proper valuation the creditors would be negatively impacted.

17. In my experience, there would be a need to review additional documentation to determine the future cash flows and the actual value using future earnings. Specifically, these documents would include:

    a: Financial statements for the year ended 2016 and the quarter ended March 31, 2017

    b: General ledgers for 2013, 2014, 2015, 2016 & the quarter ended March 31, 2017. (Electronic version would be preferred)

    c: Any lease agreements that exist.

    d: Any agreements with subsidiaries and the financial statements for the subsidiaries.

    e: Bank statements for 2015 through the present.

    f: Disclosures of any related party transactions, including leases by related parties.

    g: Any current agreements between iCrco, Inc. and its owner.

    h: Summary of all payments made to shareholders from the date of the judgment in the State Court Case to the present. This should include all salary, bonus, other compensation and loan payments.

18. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of May 2017.

_____
HENRY J. KAHRS, CP/CFF/ABV, CMA, CFE



# Henry Kahrs

**Service Expertise**
**Corporate**
  Bankruptcy
  Forensic Technology
  Fraud Investigations
  Regulation & Competition Finance
  Shareholder Disputes
  Subrogation
  Valuation
**Insurance**
  Financial Lines
    Crime & Fidelity
    Directors & Officers
  Liability
    Personal Injury/Fatal Accident
    Professional Liability
  Property
    Business Interruption/Contingent BI
    Construction
    Delayed Start Up
    Extra Expense
    Property Damage
    Subrogation
**Legal**
  Arbitration
  Class Action
    Securities Class Action
    Wage & Hour
  Commercial Litigation
    Bankruptcy/Solvency
    Contractual Disputes
    Intellectual Property
    Product Liability/Recall
    Shareholder Disputes
  Construction
  Family Law
  Forensic Technology
  Fraud Investigations
  Insurance Litigation
    Extra Expense
    Loss of Profits

Hank Kahrs is a magnet for high-profile legal disputes filled with anomalies that require judgment and a nuanced understanding that can only come from experience. For the past 25 years, Hank has practiced as a forensic accountant and fraud examiner quantifying economic damages in complex commercial, civil and criminal cases. His career has seen him quantifying IP damages related to images of 1950s Hollywood royalty, working with rock stars in contract disputes, and valuing assets and businesses in diverse industries, including technology, medical devices, and manufacturing.

As an advisor and financial expert, Hank's judgment is respected and trusted by his clients. He works extensively with law firms serving as an expert in hundreds of cases, testifying in trials, arbitrations and depositions, and has been involved with cases involving the quantification of damages resulting from:

- Fraud schemes
- Business valuation
- Partnership and corporate dissolution
- Asset tracing
- Breach of contract
- Trademark and copyright infringements
- Contract and shareholder disputes
- Personal injury and wrongful death

Hank leads RGL's operations in Southern California. He serves on the Board of Directors of the Coastline Community College Foundation and the Boys & Girls Club of Tustin in Tustin, California.

### Representative Experience
Hank's representative experience includes

- Working on behalf of singer Josh Todd and the band Buckcherry, quantified economic damages in a legal dispute with the band's former manager following the breakup of the band. RGL's analysis enabled Josh to sever his personal services contract and to reunite Buckcherry, leading to the release of a new platinum album.



**Henry Kahrs**
CPA, ABV, CFF, CFE, CMA, CM
Partner

D +1 714 740 6164 (Orange County)
D +1 213 405 9095 (Los Angeles)
M +1 714 392 4587
E hkahrs@rgl.com

**Orange County Office**
625 The City Drive, Suite 290
Orange, CA 92868-4938
T +1 714 740 2100

**Los Angeles Office**
800 S Figueroa Street, Suite 980
Los Angeles, CA 90017-2764
T +1 213 996 0900


Discovering & Defining Financial Value

# Henry Kahrs Page 2

**Personal Injury/Fatal Accident**
**Regulation & Competition Finance**
   Competition Analysis
**Valuation**
   Complex Commercial Disputes
**Public Sector**
   Fraud Investigations
   Regulation & Competition Finance
   Competition Policy

**Industry Experience**
Aerospace & Defense
Banking & Financial Services
Business Support Services
Construction, Engineering & Real Estate
Electronics & Semiconductors
Entertainment & Media
Environmental
Food & Beverage Processing
Hospitality, Leisure & Tourism
Manufacturing
Professional Services
Retail
Technology & Telecommunications
Warehousing & Distribution

- Calculating the value of a publicly traded medical device company that specializes in the production of pain pumps in connection with a public merger transaction.

- Reviewing the books and records for a textile wholesaler in California whose owner was accused of arson when a fire damaged the business. Accounting irregularities including transfers of cash from personal accounts and false customer invoices were uncovered, indicating a financial motive for the arson. The engagement also involved the calculation of value of the damaged inventory and lost profits, and giving expert testimony at the criminal trial.

- Calculating the lost profits for a rubber manufacturing business in California that was destroyed in a fire. Analysis included the valuation of damaged inventory and equipment and the impact of extra expenses incurred in clean up and re-opening the business.

- Assisting in a trademark infringement case in California involving improper use of a trademark in advertising. Calculated the profits earned by the infringing party and assisted in the settlement negotiations when the infringer offered its business as part of the settlement. Also provided insight into the valuation issues to procure a better settlement.

- Calculating the fair market value of shares owned by an employee of a spa manufacturing company in California who had been bought-out based on fraudulent representations made by a majority shareholder. The damage calculation included profits not distributed to the shareholder, corrections to profits as a result of irregularities committed by the majority shareholder, and analyses of corporate contributions and underpayment to the employee for the value of the shares.

**Court Experience**
Hank has been named as an expert in hundreds of cases and has testified in trial, arbitration and in depositions. He has been retained by over 140 law firms in cases that involve loss of profits, real estate shareholder disputes, business valuation, lost earnings, fraud, bankruptcy, construction, contract disputes, corporate & partnership dissolution, marital dissolution, asset tracing, workers compensation insurance, embezzlement and intellectual property damages.



RGL Forensics
Discovering & Defining Financial Value

# Henry Kahrs Page 3

**Publications & Presentations**

Hank has participated in seminars and presentations to colleagues and members of the insurance industry and legal profession through trade associations on topics such as investigative accounting, fraud, the measurement of economic damages, the economics of intellectual property, understanding financial statements, and using and cross examining experts. He has also authored and delivered numerous continuing legal and accounting education courses, including:

- "Cross Examining a Financial Expert," private law firm seminar, December 2015
- "Lie Spotting," private law firm seminar, February 2015
- "Cross Examining an Expert," private law firm seminar, June 2014
- "If It's All About the Money, Which Expert is Right for You?," Litigation Management, Winter 2013
- "Forensic Accounting in Divorce Cases," RGL Forensics webinar, November 2013
- "Effective Use of an Expert," private law firm seminar, September 2013
- "Understanding Business Valuation," San Diego Bar Association, November 2012
- "Effective Use of an Expert," panel with Jan Ramsay & Kurt Grosz, Orange County Bar Association, May 2012
- "Understanding Financial Statements," Orange County Bankruptcy Forum, March 2012
- "The Economics of Intellectual Property," Webster University, March 2012
- "Adjustments in Divorce Assignments," private law firm seminar, March 2011
- "Reading & Understanding Financial Statements," California State Bar Association, January 2011



# Henry Kahrs Page 4

**Professional Credentials & Education**
Certified Public Accountant
Accredited in Business Valuation, American Institute of CPAs
Certified in Financial Forensics
Certified Fraud Examiner
Certified Management Accountant
Candidate Member, American Society of Appraisers
1991, Master of Business Administration—Finance,
California State University
1985, Bachelor of Science—Accounting, Rochester Institute
of Technology

**Memberships**
Member, American Institute of Certified Public Accountants
Member, California Society of Certified Public Accountants
Member, Institute of Certified Management Accountants
Member, Financial Management Honor Society
Member, National Association of Forensic Economists
Member, Association of Certified Fraud Examiners
Candidate Member, American Society of Appraisers
Boys & Girls Club of Tustin – Board of Directors, 2009—Present
Boys & Girls Club of Tustin – CFO, 2011—2015
California State University Blue Ribbon Committee, 2012—Present
Coastline Community College Foundation, 2010—Present

**Work History**

| | |
|---|---|
| 1997—Present | RGL Forensics, Orange County, California |
| 1988—1996 | Campos & Stratis, Orange County, California |
| 1987—1988 | Campos & Stratis, Los Angeles, California |
| 1985—1987 | Campos & Stratis, Teaneck, New Jersey |

iCRco, Inc
2013-2018 Income Statement
Historical & Projection

| | Actual 2013 | Actual 2014 | Actual 2015 | Actual Q1 2016 | Actual Q2 2016 | Actual Q3 2016 | Projection Q4 2016 | Projection 2016 | Projection Q1 2017 | Projection Q2 2017 | Projection Q3 2017 | Projection Q4 2017 | Projection 2017 | Projection Q1 2018 | Projection Q2 2018 | Projection Q3 2018 | Projection Q4 2018 | Projection 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales, net | 18,175,488 | 18,770,018 | 15,437,000 | 3,196,271 | 3,379,568 | 3,234,662 | 3,146,581 | 12,957,081 | 2,828,900 | 2,991,600 | 3,006,900 | 3,361,820 | 12,189,220 | 2,828,900 | 2,991,600 | 3,006,900 | 3,361,820 | 12,189,220 |
| Cost Of Goods Sold | 8,671,283 | 9,610,985 | 9,772,768 | 1,548,750 | 1,673,372 | 1,593,529 | 1,649,206 | 6,464,857 | 1,356,750 | 1,518,950 | 1,531,350 | 1,654,710 | 6,061,760 | 1,356,750 | 1,518,950 | 1,531,350 | 1,654,710 | 6,061,760 |
| Gross Profit | 9,504,205 | 9,159,032 | 5,664,232 | 1,647,521 | 1,706,195 | 1,641,133 | 1,497,375 | 6,492,224 | 1,472,150 | 1,472,650 | 1,475,550 | 1,707,110 | 6,127,460 | 1,472,150 | 1,472,650 | 1,475,550 | 1,707,110 | 6,127,460 |
| Gross Profit % | 52.3% | 48.8% | 36.7% | 51.5% | 50.5% | 50.7% | 47.6% | 50.1% | 52.0% | 49.2% | 49.1% | 50.8% | 50.3% | 52.0% | 49.2% | 49.1% | 50.8% | 50.3% |
| Salaries, Wages, Commission | 6,094,444 | 5,604,924 | 4,121,882 | 984,080 | 970,375 | 873,344 | 793,842 | 3,621,640 | 775,000 | 784,200 | 784,500 | 791,700 | 3,135,400 | 775,000 | 784,200 | 784,500 | 791,700 | 3,135,400 |
| Travel & Entertainment | 485,370 | 376,365 | 173,024 | 33,922 | 33,948 | 42,995 | 24,895 | 135,760 | 32,800 | 34,800 | 34,800 | 34,800 | 137,200 | 32,800 | 34,800 | 34,800 | 34,800 | 137,200 |
| Utilities | 227,422 | 272,423 | 212,700 | 38,965 | 39,889 | 45,804 | 40,626 | 165,285 | 33,600 | 35,600 | 42,600 | 34,600 | 146,400 | 33,600 | 35,600 | 42,600 | 34,600 | 146,400 |
| Facilities | 940,963 | 879,386 | 669,142 | 138,760 | 135,242 | 129,286 | 128,154 | 531,442 | 127,500 | 127,500 | 127,500 | 127,500 | 510,000 | 127,500 | 127,500 | 127,500 | 127,500 | 510,000 |
| Advertising and Trade Promotions | 268,355 | 569,213 | 419,087 | 126,276 | 64,827 | 36,691 | 215,078 | 442,873 | 80,900 | 30,900 | 15,900 | 195,900 | 323,600 | 80,900 | 30,900 | 15,900 | 195,900 | 323,600 |
| Professional | 945,119 | 599,160 | 1,053,284 | 186,237 | 173,262 | 146,381 | 166,092 | 671,972 | 159,000 | 148,000 | 138,000 | 138,000 | 583,000 | 138,000 | 148,000 | 138,000 | 138,000 | 562,000 |
| General & Administrative | 748,519 | 648,939 | 631,674 | 74,770 | 251,256 | 128,297 | 105,878 | 560,202 | 125,205 | 118,505 | 120,205 | 120,405 | 484,320 | 125,205 | 118,505 | 120,205 | 120,405 | 484,320 |
| Depreciation and Amortization | 215,248 | 148,745 | 115,998 | 26,913 | 26,020 | 25,199 | 25,965 | 104,097 | 26,400 | 26,400 | 26,400 | 26,400 | 105,600 | 26,400 | 26,400 | 26,400 | 26,400 | 105,600 |
| Selling, General & Administrative Expense | 9,925,440 | 9,099,156 | 7,396,792 | 1,609,924 | 1,694,819 | 1,427,997 | 1,500,530 | 6,233,270 | 1,360,405 | 1,305,905 | 1,289,905 | 1,469,305 | 5,425,520 | 1,339,405 | 1,305,905 | 1,289,905 | 1,469,305 | 5,404,520 |
| % Sales | 54.6% | 48.5% | 47.9% | 50.4% | 50.1% | 44.1% | 47.7% | 48.1% | 48.1% | 43.7% | 42.9% | 43.7% | 44.5% | 47.3% | 43.7% | 42.9% | 43.7% | 44.3% |
| Income (Loss) from Operations | (421,235) | 59,877 | (1,732,559) | 37,597 | 11,376 | 213,136 | (3,155) | 258,954 | 111,745 | 166,745 | 185,645 | 237,805 | 701,940 | 132,745 | 166,745 | 185,645 | 237,805 | 722,940 |
| Other Income (Expense) | | | | | | | | | | | | | | | | | | |
| Interest Income | 170 | 9,396 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Income | 119 | - | 17,432 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| (Loss) from Equity in subsidiaries | (84,733) | (229,937) | (82,621) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Expense | (50,854) | (83,028) | (36,800) | (6,051) | (7,250) | (7,437) | (7,100) | (27,837) | (14,363) | (11,675) | (8,715) | (5,691) | (40,445) | (2,603) | (170) | - | - | (2,773) |
| Total other Income (Expense) | (135,298) | (303,569) | (101,989) | (6,051) | (7,250) | (7,437) | (7,100) | (27,837) | (14,363) | (11,675) | (8,715) | (5,691) | (40,445) | (2,603) | (170) | - | - | (2,773) |
| Income (Loss) Before Provision | (556,533) | (243,692) | (1,834,548) | 31,547 | 4,126 | 205,699 | (10,255) | 231,117 | 97,382 | 155,070 | 176,930 | 232,114 | 661,495 | 130,142 | 166,575 | 185,645 | 237,805 | 720,167 |
| Provision for Income Tax | 11,500 | 800 | 800 | | | | | | | | | | | | | | | |
| Med Excise Tax | 126,854 | 106,140 | 111,553 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Income (Loss) | (694,887) | (350,633) | (1,946,901) | 31,547 | 4,126 | 205,699 | (10,255) | 231,117 | 97,382 | 155,070 | 176,930 | 232,114 | 661,495 | 130,142 | 166,575 | 185,645 | 237,805 | 720,167 |

# Mark Valentine
# v.
# iCRco, Inc., et al.

## Analysis and Estimate of the Value of a 5% Interest in iCRco, Inc. as of:

- <u>December 31, 2009</u> (most recent reviewed reports available at the time of M. Valentine's separation from iCRco)
- <u>December 31, 2011 (most recent accountant-reviewed financial reports currently available)</u>

Prepared by:
Karl J. Schulze CPA, CVA, CFE, CFF
*Schulze Haynes Loevenguth & Co.*

Exhibit  3
K. Schulze
3-11-13
S. Clifford. CSR 10154

## iCRco, Inc.
## Estimate of Value Calculation
### *Based on Company Operations for the Year Ended December 31, 2009*

**Market Method, Based on Transactional Data:**

| | Value Calculations Based On: | |
|---|---:|---:|
| | **Revenue Multiple** | **EBITDA Multiple** |
| Relevant weighted factor (Schedule 2.1) | 0.9 | 8.3 |
| iCRco amount (Schedule 5) | $ 19,340,387 | $ 3,039,060 |
| Indicated enterprise value | $ 17,406,348 | $ 25,224,198 |
| Less amount due to shareholder at 12/31/09 (Schedule 6) | (1,000,813) | (1,000,813) |
| Adjusted enterprise value | $ 16,405,535 | $ 24,223,385 |
| 5% interest in above | $ 820,277 | $ 1,211,169 |
| Less estimated minority interest discount [1] | (287,097) | (423,909) |
| Net value of a 5% interest | $ 533,180 | $ 787,260 |
| Weighting [2] | 60% | 40% |
| Weighted value of a 5% interest | | $ 634,812 |

**Income Method, Capitalization of EBITDA**

| | |
|---|---:|
| Relevant weighted factor (capitalization rate) | 17.00% |
| iCRco amount | $ 3,039,060 |
| Indicated enterprise value | $ 17,876,824 |
| Less amount due to shareholder at 12/31/09 | (1,000,813) |
| Adjusted enterprise value | $ 16,876,011 |
| 5% interest | $ 843,801 |
| Less estimated minority interest discount [1] | (295,330) |
| Net value of a 5% interest | $ 548,470 |

[1] Estimated minority interest discount of 35% based on consideration of (a) various restricted stock studies, and (b) IRS case history. No marketability discount is applied since all transactional data is based on private-company transactions.

[2] Weighting is more heavily weighted toward a revenue multiple, since most privately-held transactions are based on revenue, rather than earnings, as it is likely that a third-party buyer will significantly modify the operating cost structure post-acquisition